UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RAPHAEL STEIN,

                       Petitioner,                       Case No. 7:2022cv10683 (VB)

        v.                                **<u>VERIFIED ANSWER</u>**

ADEENA KOHN,

                       Respondent.

----------------------------------------------------------------X


      Respondent, Adeena Kohn, by her attorney, Jeremy D. Morley, answers the Petition as follows:

      1.      Respondent denies the allegations in Paragraph 1 of the Petition except admits that the parties' children (the "Children") are aged 6, 4 and 2.

      2.      Respondent admits the allegations in Paragraphs 2 and 6 of the Petition, except denies that the habitual residence of the children is in Canada.

      3.      Respondent admits the allegations in Paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 25, 27, 31 and 43 of the Petition.

      4.      Respondent denies the allegations in Paragraphs 11, 12, 18, 19, 20, 21, 22, 23, 26, 33, 34, 37, 40, 41, 42, 44, 45, 47, and 49 of the Petition.

      5.      With respect to Petitioner's allegations in Paragraph 18 of the Petition that the Children "were and are habitually resident in Canada", Respondent asserts that the Petition must be dismissed because the habitual residence of the Children was not in Canada immediately before the date that they were allegedly wrongfully retained. In this regard, Respondent states as follows:

a)      Article 3 of the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") directs courts to only one point in time: the time "immediately before the removal or retention."

b)      In a case of allegedly wrongful retention, which is what is alleged by Petitioner, the court must first determine whether, on the date of the allegedly wrongful retention, the children were habitually resident in the country from which they were allegedly wrongfully retained.

c)      The court in *Blackledge v. Blackledge*, 866 F.3d 169, 170 (3d Cir. 2017) held that, "the retention date is the date beyond which the noncustodial parent no longer consents to the child's continued habitation with the custodial parent and instead seeks to reassert custody rights, as clearly and unequivocally communicated through words, actions, or some combination thereof." Applying that formulation, the court in *Blackledge* held that the retention date was not the date that the father stated that he wanted his son returned to him in Germany, but was the date when he filed his Hague Convention petition, since only then did he unequivocally withdraw his consent for his son to reside in the United States.

d)      Petitioner has referred to various dates as being the dates of the alleged wrongful retention of the Children or the dates when he understood that Respondent was refusing to return the children to Canada. He was most certainly on notice that Respondent would not return with the Children when, on October 6, 2021, he was served with a summons (a copy of which is attached as Exhibit A) in Respondent's case in the Supreme Court, Rockland County in which she asked for a divorce and for sole custody of the Children. However, Petitioner never unequivocally demanded the return of the

Children to Canada until he commenced the pending case on December 19, 2022, and served it on Respondent on December 27, 2022. The Petitioner had previously, repeatedly and continuously consented to the Children remaining in the United States and to the issues concerning the Children being determined under New York law in New York and he had made no prior unequivocal demand for their immediate return to live in Canada.

       e)      Petitioner, the Children and the Respondent have lived in Monsey, New York continuously from August 2020 to the present day.

       f)      After the parties and the Children moved to New York, Petitioner initially retained the parties' apartment in Montreal and visited Montreal from time to time, while primarily residing with the Respondent and the Children in Monsey.

       g)      On March 25, 2021, the Petitioner gave notice to the landlord of the Montreal apartment that the parties would not renew the lease for the apartment. Petitioner's email is attached as Exhibit B.

       h)      On May 7, 2021 Petitioner signed an application for the parties and Children to move to another apartment in Monsey, with a projected occupancy date of August 2021. The application is attached as Exhibit C. Petitioner stated in the application that he resided in Monsey and that he worked from home.

       i)      In May 2021, Petitioner packed up all of the parties' belongings in the Montreal apartment, rented a truck on two occasions, moved all of the parties', furniture and other belongings, (except for items they gave away on or discarded) to Monsey, and fully vacated the apartment, as Petitioner confirmed in his affirmation dated January 12, 2022, relevant portions of which are attached as Exhibit D. He stated there that, "The

packing and moving took 3 months of hard work, and required two separate 20-foot U-Haul truck rentals. I drove both of them down, a few weeks apart."

j)      Respondent visited Montreal with the Children from May 14, 2021 to May 23, 2021, during which time she helped Petitioner pack up the belongings in the apartment. When they left, respondent drove the U-Haul truck to New York and Respondent drove with the Children by car.

k)      Respondent took the Children for two further short visits to Canada, in July 2021 and in August 2021. Subsequently, Petitioner took the Children for short family visits to his parents' house in Montreal in September and in October of 2022, as expressly authorized by the Rockland County court. Petitioner took no steps to retain the Children in Canada during any of the visits. Indeed, he provided Respondent with written authorization to remove the Children from Canada, copies of which are attached as Exhibit E.

l)      Promptly after moving to Monsey in August 2020, the parties enrolled the Children in schools and daycare in Monsey area and the Children have attended such schools and the daycare continuously thereafter. Petitioner attended interviews for such schools and signed and submitted necessary applications. Thus, on May 3, 2021 Petitioner exchanged emails with the local school that the parties' oldest child was attending concerning his intended registration for the next school year. The emails are attached as Exhibit F. On June 8, 2021, Petitioner signed a Consent Agreement, attached as Exhibit G, for the older child to attend the school for the 2021-2022 school year commencing September 2021. On October 22, 2021, Petitioner signed, and the parties

submitted, their application for their middle child to attend kindergarten locally (a copy

of which is attached as Exhibit H).

        m)      On September 29, 2021, Petitioner sent a text to Respondent and third

parties in which he stated that he and the Respondent were separating and that the

Children would continue to reside in Monsey with the Respondent. Specifically, he stated

as follows:

> "Hey everyone! I know this is going to be pretty
> shocking but Adeena and I have decided to part
> ways…. Adeena will be living in Monsey with
> the kids there most of the time, and I will likely
> be somewhere else."

A copy of the message is attached as Exhibit I.

        n)      Respondent commenced the Rockland County case on October 4, 2021,

for divorce, custody and related relief. (Exhibit A). The case then remained entirely

dormant until January 12, 2022, when Petitioner moved in the Rockland County Supreme

Court for an order to provide him with interim paternity time with the Children in

Monsey, with only limited visits to Canada. He did not demand relocation of the Children

to Canada. He did not state that he would file a Convention case. He did not demand the

return of the Children to Canada. He informed the Court that he decided that he preferred

to live in Florida, not Canada, and that in January 2021 the parties and the Children had

visited Orthodox Jewish communities in Florida with a view to living there instead of

Monsey, but that they had not agreed to such a move. A copy of the relevant portions of

his affirmation is attached as Exhibit D. He informed the Court that the parties had given

up their apartment in Montreal and that he had moved all of the family's belongings to

Monsey. (This was in May 2021).

5

o)    Petitioner subsequently made further applications to the Rockland County court, in connection with which he informed the court that he had moved to a separate apartment in Monsey and had obtained full-time employment there, and in which he confirmed that he and the Children have abandoned their residency in Canada and that he consents to the Children residing indefinitely in New York. (See Exhibit J, from his affirmation dated March 18, 2022, by way of example).

p)    On April 25, 2022, each of the parties and their respective attorneys signed the Preliminary Conference Stipulation, which was then so ordered by the Rockland County Court, a copy of which is attached as Exhibit K. The order provided that the issues of custody, parenting time and decision-making concerning the Children, together with maintenance, child support and equitable distribution of property were unresolved and remained to be determined by the Court. The Court separately stated that an attorney for the Children would be appointed and that a forensic psychologist or psychiatrist would be assigned "to do a full-blown evaluation of the children" if the parties could not settle the case. The relevant portions of the transcript of the Court's statements on those issues are attached as Exhibit L.

q)    Petitioner was ordered by the Rockland County court, by Order dated August 16, 2022 and attached as Exhibit M hereto, to pay child support, spousal maintenance, 70% of unreimbursed medical and child care expenses including day camp, and counsel fees to the Respondent.

r)    Petitioner has not complied with such orders and on October 19, 2022 Respondent moved by order to show cause in the Rockland County case to hold Petitioner in willful violation and contempt of the orders.

s)      On November 23, 2022, Petitioner moved to modify the Rockland County

financial orders and asserted that he had lost his job in Money, that he was actively

searching for new work, and that he had had registered for New York unemployment

benefits. The relevant portions of his affirmation are attached as Exhibit N. He stated

further that:

> "36. Unlike the plaintiff, I do not have immediate
> family in this area, nor a network of extended
> family long established in the community. I
> moved here for the Plaintiff, who told me it was
> medically necessary for her health. …
>
> 39. I sacrificed immensely in allowing the
> Plaintiff's needs to dictate all aspects of my life
> and my children's lives….
>
> 40. …I now find myself starting over in a new
> country,…"

t)      In an affirmation dated December 5, 2022, in support of an application to

receive the benefits of a "poor person" in the state court case, Petitioner claimed that he

had submitted 40 applications for employment in New York without any success. The

relevant parts of the affirmation are attached as Exhibit O hereto.

u)      Petitioner never informed the Rockland County court that he demanded

the return of the Children to Canada. Nor did he seek any order permitting him to move

the Children back to Canada.. To the contrary, he continuously sought the court's

assistance in seeing the Children in Monsey only, with occasional short-term visits to

Canada.

v)      In January 2022, Petitioner initiated proceedings against the Respondent

before a Jewish court (a "Bais Din") in Monsey, to which the Respondent responded and

asserted her own claims. An initial hearing was held on March 22, 2022. Petitioner then refused to proceed with such proceedings and insisted instead that all issues concerning the custody of the Children should be determined by the Rockland County court under New York law. Thus, by email dated March 28, 2022, attached as Exhibit P hereto, he stated that,

> "My understanding was the same as Rabbi Shuchat's, that without an arbitration agreement, there is no point in reconvening to once again discuss what everyone in the New York divorce industry knows; custody matters cannot legally be arbitrated. Although it is already common sense, I have also received guidance from a widely-respected Rov that since Ms. Kohn originally brought it to secular court it should be resolved there."

He then stated by email on March 29, 2022, attached as Exhibit Q hereto, that,

> "I have agreed to adjudicate all issues in Bais Din, in accordance with New York State law and the circumstances that Ms. Kohn has placed us in. It was me who brought this case to Bais Din in the first place."

w)   Petitioner never commenced any case in a religious court in Canada and he never asked the religious court in Monsey to order that the Children should be returned to Canada or for any redress arising from any supposed abduction of the Children.

x)   Petitioner lived with the Respondent and the Children in Monsey until they separated in or about November 2021. Petitioner then leased his own apartment in Monsey and has resided there continuously since November 2021.

y)      Petitioner obtained health insurance coverage through Fidelis Care, as confirmed by the Fidelis document attached as Exhibit R hereto. The Children are fully covered by health insurance in New York, as confirmed by Exhibit S hereto.

z)      Petitioner obtained permanent employment in Monsey as a software engineer, from March 28, 2022. He alleges (Exhibit O) that he was laid off from that position and that he has been searching for employment in New York without success. He states that subsequently applied for, and obtained, unemployment insurance in New York, as a New York resident which, on information and belief, he is still receiving.

aa)     Petitioner's further continuing conduct, including his settling in Monsey, obtaining employment in Monsey, obtaining unemployment benefits in New York, applying for and registering the Children in school in Monsey, and applying to the state court for further time with the Children in Monsey, further demonstrates his continuing and consistent attitude of consent and acquiescence in the Children remaining in the United States over a significant period of time.

bb)     In *Monasky v. Taglieri*, 140 S. Ct. 719 (2020), the U.S. Supreme Court overturned the prior jurisprudence on the determination of habitual residence It rejected the prior emphasis on parental agreement and held that,

> "The bottom line: There are no categorical requirements for establishing a child's habitual residence - least of all an actual agreement requirement for infants."      140 S. Ct. at 728.

Instead, the Court adopted the standard of "totality of the circumstances" and held that,

> "What makes a child's residence "habitual" is therefore "some degree of integration by the child in a social and family environment." *OL* v. *PQ*, 2017 E. C. R. No. C–

> 111/17, ¶42 (Judgt. of June 8); accord *Office of the Children's Lawyer* v. *Balev*, [2018] 1 S. C.R. 398, 421, ¶43, 424 D. L. R. (4th) 391, 410, ¶43 (Can.); *A* v. *A*, [2014] A. C., ¶54 (2013) (U.K.). Accordingly, while Federal Courts of Appeals have diverged, if only in emphasis, in the standards they use to locate a child's habitual residence, see *supra*, at 725 – 726, they share a "common" understanding: The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence. *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (CA3 2006)."         (*id.* at 726-727)

cc)     For children other than infants, the Supreme Court stated that the factors that courts had considered in making such determinations have included a change in geography combined with the passage of an appreciable period of time, the age of the child, the immigration status of the child and parent, academic activities, social engagements, participation in sports programs and excursions, meaningful connections with the people and places in the child's new country, language proficiency and location of personal belongings. (*id.* at 727, f.3).

dd)     In applying these principles to the pending case, the relevant facts include the following: The Children have lived exclusively in the same location and indeed the same apartment complex for the past two years and five months, they and their parents are all U.S. citizens, they have attended the same schools, camps and synagogue throughout that period with the full support and assistance of the parties, they have lived throughout in their community in Monsey with both of their parents in the same apartment and then remaining in the Respondent's apartment with the Petitioner living nearby, they have been surrounded throughout by a large and warm family in a very local area, they have established significant friends in that area, they have participated in

numerous programs with friends and family, and they are fully accustomed to and entirely at home in Monsey, New York, USA.

      ee)    The Children were not habitually resident in Canada at the time of the allegedly wrongful retention.

      6.    Respondent admits the allegations in Paragraph 24 of the Petition, except denies that her mother was born and raised in Montreal and denies that the parties had no intent to relocate away from Canada.

      7.    Respondent admits the allegations in the first sentence of Paragraph 28 of the Petition and denies the allegations in the second sentence thereof.

      8.    Respondent admits the allegations in Paragraph 29 of the Petition, except asserts that the primary reason that she left Canada with the Children was for Respondent and the Children to be in a safe environment in which Petitioner's abusive conduct could be monitored and controlled.

      9.    Respondent denies the allegations in Paragraph 30 of the Petition, except admits that the parties moved to New York on August 16, 2020.

      10.    Respondent denies the allegations in Paragraph 32 of the Petition, except admits that the parties and the Children resided in the apartment.

      11.    Respondent denies the allegations in Paragraph 35 of the Petition, except admits that Exhibit G to the Petition is a note from Dr. Price and admits that, with Petitioner's consent, the family remained living in New York.

      12.    Respondent denies the allegations in Paragraph 36 of the Petition, except admits that the Children have returned to Canada on occasions for visits only.

13.     Respondent denies the allegations in Paragraph 38 of the Petition, except admits that her parents paid certain expenses and asked Petitioner to make certain financial contributions and mentioned to him certain matters relating to Respondent's sister.

14.     Respondent denies the allegations in Paragraph 39 of the Petition, except admits that, after Petitioner informed her falsely that he had filed for divorce in Canada, she filed for divorce and custody in New York on October 4, 2021.

15.     Respondent denies the allegations in Paragraph 46 of the Petition, except admits that the parties and the Children resided together in the apartment continuously from August 2020 to December 2021, that at a rabbi's insistence the lock to the apartment was changed, that Respondent asked Petitioner to leave the apartment and that after Petitioner asked the Rockland County, New York Court to handle all issues concerning the custody of the Children, the Respondent informed the Court that he had acted abusively to her and the Children.

16.     Respondent denies the allegations in Paragraph 48 of the Petition, except admits that her father is an investment adviser at CIBC Wood Gundy.

17.     Respondent denies the allegations in Paragraph 50 of the Petition, except admits that the parties made submissions to the Rockland County Supreme Court and refers to those submissions for the contents thereof, that the court appointed an attorney for the Children to represent them as to all matters concerning the determination of the custody and best interests of the Children and refers to the submissions of that attorney for the contents thereof.

18.     Respondent denies knowledge and information concerning the allegation in Paragraph 51 of the Petition.

19.     Respondent denies the allegations and applications made by the Respondent in Paragraph 52 of the Petition.

**First Affirmative Defense** (Consent)

20.      Respondent repeats and realleges the allegations set forth in Paragraph 5 hereof.

21.      The Petition should be denied pursuant to Article 13(a) of the Convention. Consent is an affirmative defense, under which "a district court is not bound to return a wrongfully removed or retained child if the respondent demonstrates by a preponderance of evidence that the petitioner 'had consented to ….. the removal or retention'." *Mota v. Castillo,* 692 F.3d 108. 117 (2d. Cir. 2012).

22.      Consent may be made expressly or may be implied from the Petitioner's conduct. *Walker v. Walker*, 701 F. 3d 1110, 1122 (7th Cir. 2012).

23.      There is substantial additional evidence of Petitioner's consent to the Children residing in New York.

24.      Petitioner has consented to the Children living in the United States.

**Second Affirmation Defense** (acquiescence)

25.      Respondent repeats and realleges the allegations set forth in Paragraph 5 hereof.

26.      The Petition should be denied pursuant to that portion of Article 13(a) of the Convention that provides that a child may not be returned if the petitioner "subsequently acquiesced in the removal or retention." An acquiescence defense requires either an act or statement with the requisite formality, such as testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude of acquiescence over a significant period of time." *Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996).

27.     Consent for a particular tribunal to make a final custody determination, which may be established by entry of a temporary custody order, suffices to establish the affirmative defense of acquiescence. *Larbie v. Larbie,* 690 F. 3d 295 (5ᵗʰ Cir. 2012).

28.     The Petitioner has consistently acquiesced in the Children remaining in the United States.

### **Third Affirmative Defense** (one year and settled)

29.     Article 12 of the Convention provides that,

> "Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
>
> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless, it is demonstrated that the child is now settled in its new environment."

30.     Accordingly, the default presumption under the Convention is that Children shall be returned to the state from which they were wrongfully retained, if that state was their habitual residence on the date of wrongful retention, unless both of two conditions are met: (1) one year has elapsed between the date of wrongful removal and the date proceedings commence; and (2) the children are "now settled in [their] new environment."

31.     Petitioner will be unable to meet his burden of proving that the Children were wrongfully retained from their alleged habitual residence in Canada, but if he could do so, he would then need to establish the date of the wrongful retention.

32.     Petitioner has referred to various dates as being the dates of the alleged wrongful retention of the Children or the dates when he understood that Respondent was refusing to return the children to Canada. He was most certainly on notice that Respondent would not return with the Children when, on October 6, 2021, he was served with a summons in Respondent's case in Rockland County in which she asked for a divorce and for sole custody of the Children.

33.     The International Child Abduction Remedies Act provides that "the term 'commencement of proceedings', as used in Article 12 of the Convention means with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section." 22 U.S.C. §9003(f)(3). Subsection (b) of the section provides that proceedings may be initiated "by commencing the civil action for the relief sought in any court which has jurisdiction of such action..." 22 U.S.C. §9003(b). Therefore, the one-year period in the pending case ends on December 17, 2022, when Petitioner filed the pending action. *See Wojcik v. Wojcik*, 959 F. Supp. 413, 418 (E.D. Mich. 1997) (finding contact with the Central Authority does not commence the proceedings). If the date of the allegedly wrongful retention was October 6, 2021, or a date earlier than that, the Respondent can rely fully on the "one year and settled" defense if the children are now settled in their new environment.

34.     The Children are now fully settled in their environment in Monsey, as evidenced among other factors by the following:

a)     They have lived in Monsey continuously since August 2020, i.e., for two years and five months.

b)     They have attended school or daycare in Monsey continuously during that period of time.

15

c)      They have attended summer camps in Monsey each summer.

d)      They have attended the same synagogue continuously since August 2020.

e)      They have always lived in the same apartment complex in Monsey.

f)      Petitioner lives only a short drive from the Respondent.

g)      In his affirmation dated January 12, 2022, Petitioner correctly asserted that, "Since the time we arrived in Monsey in August 2020, there have been a total of about 50 days of Jewish holidays…. 48 out of those 50 days were spent with the [Respondent's] parents and family."

h)      Petitioner claims that when the Children have visited him in Monsey, "they had a great time and asked to stay longer."

i)      The Children have been an integral part of a warm and loving community during all of their time in Monsey.

j)      Throughout their time in Monsey, the Children have been continuously surrounded by family members, neighbors, the children of neighbors, school friends and members of the local community.

k) The Children have continuously received their medical and dental treatment in Monsey since August 2020. Their pediatrician is Dr. Benyamin in Monsey. The parties' youngest child was seen by him on the following dates: 8/27/20, 9/17/20, 10/1/20, 10/5/20, 10/13/20, 11/5/20, 12/21/20, 3/3/21, 3/11/21, 3/25/21, 4/6/21, 4/15/21, 4/19/21, 4/28/21, 5/5/21, 6/2/21, 6/3/21, 7/15/21, 9/2/21, 11/1/21, 11/7/21, 11/8/21, 12/24/21, 1/26/22, 2/3/22, 6/1/22, 8/17/22, 9/8/22, 10/21/22, 12/13/22 and 12/16/22. The other children were likewise treated regularly by Dr. Friedman. The Children have regularly

had dental treatment at Kinder Smiles in Spring Valley, New York, as shown on the statement from the dental office that is attached as Exhibit T.

j)      Monsey is now the only home that the children know.

k)       Some photographs evidencing the Children's life in Monsey are attached as Exhibit U.

35.      The Petition should be dismissed pursuant to the "one year and settled" defense.

### **Fourth Affirmative Defense** (grave risk of harm)

36.      Article 13 of the Convention provides that a child need not be returned if it is established that "(b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."

37.      The parties and the Children left Canada in April 2020 because the Respondent had been hospitalized as a result of Petitioner's repeated physical and psychological abuse of her, much of which occurred in the presence of the Children and adversely affected them, and the Petitioner ultimately agreed that the Respondent required to be looked after by her family in New York under the supervision and care of her psychiatrist there.

38.      Petitioner's abuse of the Respondent and the Children existed throughout all of the time that they have lived in Monsey.

39.      A return of the Respondent to Canada will most likely trigger a recurrence of post-traumatic stress disorder, which will result in extremely severe consequences to the Children.

40.      There will be a grave risk of harm to the Respondent and the Children if they are returned to Canada.

17

WHEREFORE, Respondent respectfully requests that,

(a)     The Petition be dismissed.

(b)     The Court should order that the Supreme Court, Rockland County in the divorce case now pending in that court under index number 035657/2021 "shall not decide on the merits of rights of custody until it has been determined that the [Children are]not to be returned" under the Convention in accordance with Article16 of the Convention.

(c)     The Court should not order any other stay of the pending matters that are before the Supreme Court, Rockland County concerning other matters, including matters concerning divorce, interim custody of the Children, child support and spousal maintenance, or the Respondent's pending motion to hold Petitioner in contempt of court for his failure to pay court-ordered child support, spousal maintenance and attorneys' fees.

(d)     The Court should order that neither party may remove the Children from the United States or the New York, New Jersey and Connecticut tri-state area pending the determination of this case.

(e)     The Court should direct the Petitioner to pay to the Respondent the reasonable costs, expenses and attorneys' fees incurred in defending this action.


Dated: New York, New York
       January 13, 2023

                                          *Jeremy D. Morley*
                                          Jeremy D. Morley
                                          Attorney for Respondent
                                          230 Park Avenue,
                                          Third Floor West,
                                          New York, NY 10169
                                          jmorley@international-divorce.com
                                          (212) 372-3425

## **Verification**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2023.

Adeena Kohn